THE STATE EX REL. BLANK ET AL. *v.* BEASLEY, DIR.

THE STATE EX REL. KARDASSILARIS ET AL. *v.* BEASLEY, DIR.

[Cite as *State ex rel. Blank v. Beasley*, 121 Ohio St.3d 301, 2009-Ohio-835.]

*Mandamus — Writs of mandamus sought to compel appropriation of certain real property — Some of the damage to relators' property was the necessary, natural, and proximate result of the state's roadway project — Writs granted in part and denied in part.*

(Nos. 2007-2217 and 2007-2220 — Submitted September 16, 2008 — Decided March 5, 2009.)

IN MANDAMUS.

————————————

**O'DONNELL, J.**

**{¶1}** The matters before the court are original actions seeking writs of mandamus to compel the director of the Ohio Department of Transportation to appropriate relators' real property. Because these cases raise similar legal issues, we have consolidated them for resolution. We grant the writs with respect to the damages caused by the contractor's intentional operation and parking of heavy construction equipment on the relators' parking lots, which were not part of the appropriation, but were nonetheless taken for public use; we deny the requested writs with respect to the remaining damages because relators have not established that they constitute compensable takings.

**The Blanks' Property**

**{¶2}** Relators June L. Blank and the estate of Richard L. Blank own certain real estate in Cortland, Ohio. The property includes a restaurant and a florist shop. The department undertook a project to widen the existing asphalt pavement of State Route 5 through Cortland and to upgrade companion curbs,

sidewalks, drainage, signing, markings, and signals. To complete the project, the department required perpetual and temporary easements over the Blanks' property. The property subject to the perpetual easement would be used to construct and maintain a storm sewer, and the property subject to the temporary easement would be used to construct a drive and to grade the property.

{¶3} After the department and the Blanks were unable to agree on a price for the property required for the project, the former director of the department filed a petition in the Trumbull County Court of Common Pleas to appropriate portions of the Blanks' property for the perpetual and temporary easements. The department took physical possession of the property subject to the easements in April 2002.

{¶4} According to the Blanks, during the work on the project, the department used and damaged portions of their property that were not part of the appropriated property by (1) operating highway-construction equipment on parking lots, which cracked and gouged the lots, (2) breaking a sewer line and then failing to adequately fix it, causing the backup of sewage in the kitchen and restrooms in the restaurant, (3) leaving holes and cracks in sidewalks and hitting the building-support post in front of the florist shop with excavating equipment and failing to adequately repair the damages, (4) blocking a rear entrance to the restaurant used for bulk deliveries, (5) causing a brick wall of the restaurant to crack and bow out after excavating on nearby property subject to a sewer easement, (6) removing existing catch basins in front of the florist shop, lowering the grade around an existing drain, and raising the grade of the highway, all of which caused water to go through the front doors of the florist shop, damaging the carpet and impeding business during heavy rainfall, (7) temporarily blocking an access drive used for deliveries to the florist shop, and (8) cracking a sanitary-sewer line leading from the florist shop to the main sewer line and not properly repairing it.

**{¶5}** The department had hired Marucci & Gaffney Excavating Company as the contractor for the project. Under the terms of the contract with the department, the contractor was "responsible for all damage or injury to property of any character, during the prosecution of the work, resulting from any act, omission, neglect, or misconduct in his manner or method of executing the work, or at any time due to defective work or materials" and was to "save harmless the State of Ohio * * * from all suits, actions, or claims of any character brought on account of any * * * damages sustained by any * * * property in consequence of any neglect in safeguarding the work or through the use of unacceptable materials in the construction of the improvement or on account of any act or omission, by the Contractor, or his agents."

**{¶6}** According to the department's district real estate administrator, the damage alleged by the Blanks is "consistent with claims of physical damage or trespass caused by the contractor during the course of construction" and is not an indication that an additional right-of-way was necessary for the project. He further stated that the damage alleged by the Blanks could not have been anticipated by the department and that the project did not require any of the actions that led to the alleged damage.

### The Kardassilarises' Property

**{¶7}** Relators Kathy and Panagiotis Kardassilaris own certain real property in Cortland on which they have a house and a market that they operate. As part of its State Route 5 project, the department required a taking in fee simple of part of the property and temporary easements over other portions. After the department and the Kardassilarises were unable to reach an agreement on the fair market value, the former director of the department filed a petition in the Trumbull County Court of Common Pleas to appropriate the required portions of the property in October 2001. The department took physical possession of the appropriated property in January 2003.

{¶8}    According to the Kardassilarises, during the work on the project, the department used and damaged portions of their property that were not part of the appropriated property by (1) moving the water line in front of the market, causing water to back up into the building for about eight days, until the Kardassilarises had a plumber install a new check valve, (2) breaking a natural-gas line, causing the Kardassilarises to close the market for several hours, (3) removing survey pins marking boundary lines and failing to replace them, (4) cracking blacktop and concrete areas outside the appropriated property by operating and parking heavy construction equipment, (5) disturbing or removing a catch basin, which caused flooding of a customer parking lot six or seven times between January and September 2003, when the department installed new catch basins to fix the problem, (6) breaking or disconnecting the sanitary-sewer line, causing sewage to back up into the market, and not repairing it properly, and (7) disconnecting the electrical line illuminating the market's signs and not properly fixing the line, causing the Kardassilarises to hire an electrician after the signs had been out of order for about six weeks.

{¶9}    The project was part of the same one involving the Blanks' property, with the department using Marucci & Gaffney Excavating Company as the contractor, which was required to abide by the contract provisions previously discussed.  According to the department's district real estate administrator, the project could have been completed without causing the damage alleged by the Kardassilarises.

## Appropriation Cases

{¶10} In the department's appropriation cases, the Blanks and the Kardassilarises filed counterclaims in mandamus to compel the department's director to appropriate the additional portions of their property that they claimed had been taken.  The common pleas court dismissed the counterclaims for lack of subject-matter jurisdiction, and the judgments were affirmed by the court of

4

appeals. On appeal to this court, we consolidated the cases and affirmed the judgments, holding that "R.C. 5501.22 requires individuals to prosecute all claims for relief against the director of transportation in Franklin County, even those that could be brought as counterclaims under Civ.R. 13." *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, at syllabus.

### Mandamus Cases

{¶11} Less than two months after *Proctor* was released, relators filed these actions seeking to compel respondent, James G. Beasley, the current director of the department, to appropriate the additional property that they alleged had been taken. We granted alternative writs, and the parties have submitted evidence and briefs. This cause is now before the court for our consideration of the merits.

### Mandamus to Compel Appropriation

{¶12} "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation." *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 63, 765 N.E.2d 345, judgment modified in part on other grounds, 96 Ohio St.3d 379, 2002-Ohio-4905, 775 N.E.2d 493; Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *Shemo*, 95 Ohio St.3d at 63, 765 N.E.2d 345.

{¶13} In their cases, relators appear to make a "classic appropriation claim" of "an actual physical taking" of their real property. *State ex rel. Coles v. Granville*, 116 Ohio St.3d 231, 2007-Ohio-6057, 877 N.E.2d 968, ¶ 22; *Lingle v. Chevron U.S.A., Inc.* (2005), 544 U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 ("The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property").

**Property Taken for Public Use**

{¶14} Relators claim entitlement to the requested relief in mandamus pursuant to the Takings Clause of the Ohio Constitution. Section 19, Article I of the Ohio Constitution provides:

{¶15} "[W]here private property shall be *taken for public use*, a compensation therefor shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury." (Emphasis added.)

{¶16} The director argues that the asserted claims do not rise to the level of a constitutional taking of private property pursuant to Section 19, Article I of the Ohio Constitution, because they are claims for damage to property caused by the alleged improper, negligent, or otherwise tortious conduct of a state's contractor during the roadway construction and because the damage is "too unrelated" to the public use of the project. Relators reply that the encroachments to their property directly resulted from work being performed on the appropriated property and that the state should have anticipated these intrusions as part of its public purpose of improving State Route 5.

{¶17} We have acknowledged that Section 19, Article I of the Ohio Constitution limits compensation to those situations where private property is *taken* for public use, in contrast to the constitutions of some states, which guarantee compensation for private property that is taken for or *damaged by* public use. *State ex rel. Fejes v. Akron* (1966), 5 Ohio St.2d 47, 50, 34 O.O.2d 58, 213 N.E.2d 353, citing *McKee v. Akron* (1964), 176 Ohio St. 282, 284, 27 O.O.2d 197, 199 N.E.2d 592, overruled on other grounds by *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. Accordingly, we have construed this constitutional provision to require a property owner to prove something more than damage to his property in order to demonstrate a compensable taking. Id. at 52, 34 O.O.2d 58, 213 N.E.2d 353.

{¶18} We have previously emphasized that a taking requires that the claimed encroachment subject the private property to a public use. See *Norwood v. Sheen* (1933), 126 Ohio St. 482, 186 N.E. 102, paragraph one of the syllabus ("Any direct encroachment upon land, *which subjects it to a public use* that excludes or restricts the dominion and control of the owner over it, is a taking of his property, for which he is guaranteed a right of compensation by section 19 of the Bill of Rights" [emphasis added]). We have also emphasized that a taking occurs when the encroachment is caused by the creation of a public improvement "without negligence or malice." See *Lucas v. Carney* (1958), 167 Ohio St. 416, 5 O.O.2d 63, 149 N.E.2d 238, syllabus ("Where, in creating a public improvement upon land which it owns, a county *without negligence or malice but solely as a result of the creation of such improvement* physically encroaches upon the land and property of another owner and deprives that owner of any of the use and enjoyment of his property, such encroachment is a taking *pro tanto* of the property so encroached upon, for which the county is liable, and the owner of such property is entitled to institute an action and have a jury impaneled to determine the compensation due him from the county for the appropriation *pro tanto* of his property" [emphasis added]). We have further contemplated that a compensable taking may occur when a property owner can establish that damage is "intentionally directed at her property." See *McKee v. Akron*, 176 Ohio St. at 286, 27 O.O.2d 197, 199 N.E.2d 592 (Holding that a property owner did not establish a compensable taking based upon the odor emanating from a municipal sewage-disposal plant when she "was not displaced from any of her property, *the damage was not intentionally directed at her property*, and she was not deprived of all or most of her interest in the property as her home was not made uninhabitable as a result of the odor" [emphasis added]).

{¶19} Other courts have also rejected takings claims when the alleged taking resulted from negligent acts during the construction of a public project. In

*Chavez v. Laramie* (Wyo.1964), 389 P.2d 23, 24-25, the Wyoming Supreme Court rejected a taking claim for water damages to a house and apartment that occurred when a contractor hired by the state and city to construct a new viaduct and highway approaches negligently crushed a sewer line and severed a water main. The court held that the claimed damages did not constitute a taking for public use, stating:

{¶20} "The allegations of the Chavezes in this case make it clear the crushing of the sewer line and severing of the water main, with the resulting damage to their property, were accidental and unintentional. Certainly the accident and consequent damage served no public purpose, and there was absent a taking or damaging of property *for public use*.

{¶21} "* * *

{¶22} "It certainly will not be contended that every destruction of property or injury thereto by public officers or their agents, in the discharge of governmental functions, is covered by the constitutional guaranty relied upon in this case. Where the injury involves a tort, being caused by the negligence of public officers or their agents, it cannot be said that property is taken or damaged for public use. * * *

{¶23} "We think the rule stated in 4 Nichols, Eminent Domain, § 14.245[1], pp. 626-628 (Revised 3d Ed.), is correct. It states:

{¶24} " 'If the damage for which recovery is sought is the result of improper, unlawful or negligent construction * * * recovery may not be had therefore in the [condemnation] proceeding; the owner is relegated in such case to a common-law action for damages.'

{¶25} "If we permitted the theory of plaintiffs to prevail in this case, we would subject the state and city to actions for damages in all cases involving injuries to or destruction of private property resulting from the torts of their agents, when acting in an official capacity. This would effectually repeal the

8

universal rule that a state exercising governmental functions cannot be made to respond in damages for tort and is not liable for the torts of its officers or agents in the discharge of their official duties, unless it has voluntarily assumed such liability and consented to be liable." (Emphasis sic.)

{¶26} Many courts have reached similar conclusions in interpreting their state constitutional takings provisions. Referring to the Wyoming Supreme Court's *Chavez* holding as part of "a widely accepted body of case law" summarized in the Nichols treatise on the law of eminent domain, the Supreme Court of New Mexico held that for a compensable taking to occur, "the act must at least be one in which the *risk of damage to the owner's property is actually foreseen* by the governmental actor, or in which it is *so obvious that its incurrence amounts to the deliberate infliction of harm* for the purpose of carrying out the governmental project." (Emphasis added.) *Electro-Jet Tool & Mfg. Co., Inc. v. Albuquerque* (1992), 114 N.M. 676, 680, and 683, 845 P.2d 770. See also *Farmers New World Life Ins. Co. v. Bountiful City* (Utah 1990), 803 P.2d 1241, 1245 ("All damages *necessarily* resulting from the construction of [a culvert to prevent flooding] and not otherwise paid for would be recoverable in an inverse condemnation action as damages incurred for a public use under the terms of the constitutional provision. In Utah, however, under the statutes and case law, damages which are not a direct and necessary consequence of the construction or operation of a public use are not recoverable in an inverse condemnation action" [emphasis sic]); *Anchorage v. Scavenius* (Alaska 1975), 539 P.2d 1169, 1177 ("When the damage to the remaining portion of the condemnee's tract necessarily results from the imposition of the easement or the proper construction of the improvement, then the claim may properly be considered an element of the property owner's damage due to the condemnation. When the damage claim is based upon the allegedly negligent construction of the improvement, however, any loss incurred cannot properly be considered a part of the taking"); *Hammer v.*

*Ida Cty.* (Iowa 1975), 231 N.W.2d 896, 902 ("damages arising from negligent or improper construction or operation of public works are not elements to be considered in fixing the proper value of land condemned").

{¶27} As the Connecticut Supreme Court recently reiterated, "[I]f damage to the untaken land is the necessary, natural and proximate result of a public use, then the land, or at least certain interests in it, have been taken by inverse condemnation and the plaintiff is therefore entitled to just compensation. If the damages are caused by the condemnor's negligence, however, then the plaintiff is relegated to an action sounding in tort." (Footnote omitted.) *Albahary v. Bristol* (2005), 276 Conn. 426, 438-439, 886 A.2d 802.

{¶28} "While the decisions cannot be wholly reconciled on the theory that the test of a taking or damaging in the constitutional sense is whether the injury was a necessary consequence of the thing done, as distinguished from the manner of doing it, the fact that the injury was a necessary consequence would seem, even if not wholly determinative that there was a taking or damaging for a public purpose, to be factor of great weight * * *." Annotation, Damage to Private Property Caused by Negligence of Governmental Agents as "Taking," "Damage," or "Use" for Public Purposes in a Constitutional Sense (1948), 2 A.L.R.2d 677, Section 2, 1948 WL 6550. "While plaintiffs might argue that the term 'for public use' should apply any time that private property is damaged during the performance of a public purpose, courts tend to interpret 'for public use' to mean 'in order to accomplish a public use.' " 4 Tiffany Real Property (1975), Section 1254. "When the negligence of a government employee damages or destroys private property, the property is not taken or damaged for public use." *Dallas, Garland & Northeastern R.R. v. Hunt Cty.* (Tex.App.2006), 195 S.W.3d 818, 821; but cf. Rohan & Reskin, 7A Nichols on Eminent Domain (Rev.3d Ed.2007) G12-27, Section G12.03[2][d] ("An area of conflict concerns whether to award compensation for injury due to the negligence, nuisance, or trespass of the

10

condemnor. Some authorities say that this type of damage is allowed in the condemnation proceeding, while others insist that the owner can only recover in a separate tort action").

{¶29} When the prevailing weight of authority is applied to relators' takings claims here, it is evident that many of the contractor's acts that caused damage to the Blanks' and Kardassilarises' property resulted from the contractor's negligence and did not further the public purpose of improving State Route 5. That is, most of the damage to relators' property was not actually foreseen by the governmental actor or was not obviously deliberately inflicted for the purpose of carrying out the governmental project. To the contrary, the uncontroverted evidence is that the project did not require the contractor to cause most of the damage claimed by relators to their nonappropriated property. Under these circumstances, relators were relegated to alternate remedies, e.g., injunction for the alleged trespass and actions for damages based on negligence or nuisance against the state and the contractor.

{¶30} Relators' reliance on *Cowell v. Ohio Dept. of Transp.*, Ct. of Cl. No. 2003-09343-AD, 2004-Ohio-151, in which the Court of Claims held that the department's duty to maintain roadways in a safe and drivable condition was nondelegable to a contractor, is misplaced. *Cowell* actually supports the department's position with respect to the negligently caused damages because that case arose as an action for damages in the Court of Claims instead of a claim of a constitutional taking.

{¶31} However, the Blanks and Kardassilarises have demonstrated that during the construction, the state's contractor operated and/or parked heavy construction equipment on portions of their parking lots, which were not part of the appropriation. These acts impaired the Blanks' and Kardassilarises' access to and use of their own properties and caused substantial physical damage thereto. While the state may not have intended this result, given the size and weight of the

equipment involved as well as the extent of the encroachment, we conclude that the state acted with knowledge amounting to a substantial certainty that its conduct would cause such damage.

**Conclusion**

**{¶32}** Based on the foregoing, relators have established their entitlement to the requested extraordinary relief in mandamus to compel respondents to commence appropriation proceedings to determine the amount of compensation to be awarded for the state's taking of their property resulting from the operation and/or parking of heavy construction equipment on their parking lots. However, because the relators have not demonstrated that the state actually foresaw the remaining damages or that it deliberately inflicted the harm for the purpose of carrying out the governmental project, relators have not established that their remaining damages resulted in a compensable taking. Therefore, we deny the requested writs with respect to those alleged damages.

Writs granted in part

and denied in part.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

MOYER, C.J., and LANZINGER, J., dissent.

_____

**LANZINGER, J., dissenting.**

**{¶33}** I respectfully dissent from the illogical conclusion that relators have established entitlement to a writ of mandamus in this case.

**{¶34}** The Blanks and Kardassilarises complain of damage to their parking lots from heavy construction equipment. This is simply not a taking for which the state may be forced to commence appropriation proceedings. The majority's justification for its conclusion comes out of the blue: "While the state may not have intended this result, given the size and weight of the equipment involved as well as the extent of the encroachment, we conclude that *the state*

*acted with knowledge amounting to a substantial certainty* that its conduct would cause such damage." (Emphasis added.)  Majority opinion at ¶ 31.

**{¶35}** As noted by the majority, the state obtained permanent and temporary easements over portions of the Blanks' and Kardassilarises' property so that it could use that property in completing the project.  Typically, easements such as these serve as sites where contractors operate, store, and park construction equipment when they are unable to do so on the appropriated land.  The state provided for potentially damaging construction activities to be confined to the area over which it had obtained easements.  The negligence of the contractors should not be imposed on the state.  I would therefore hold that the damage to relators' parking lots was not a necessary consequence of the state's roadway project.

**{¶36}** Indeed, this is an action for damage to property.  The relators may seek compensation from any negligent contractors that caused the damage.  Because I cannot agree that the relators have established a compensable taking by the state, I respectfully dissent.

MOYER, C.J., concurs in the foregoing opinion.

_____

Frank R. Bodor, for relators.

Richard Cordray, Attorney General, and L. Martin Cordero and Richard J. Makowski, Assistant Attorneys General, for respondent.

_____