[Cite as *Jochum v. Jackson Twp.*, 2013-Ohio-3592.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| RICHARD T. JOCHUM | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff - Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | |
| -vs- | : | |
| | : | |
| JACKSON TOWNSHIP | : | Case No. 2013CA00013 |
| | : | |
| | : | |
| Defendant - Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:　　　　Appeal from the Stark County Court
　　　　　　　　　　　　　　　　　　of Common Pleas, Case No.
　　　　　　　　　　　　　　　　　　2012CV02341


JUDGMENT:　　　　　　　　　　　　Affirmed


DATE OF JUDGMENT:　　　　　　　　August 19, 2013


APPEARANCES:

For Plaintiff-Appellant　　　　　　　For Defendant-Appellee

DAVID M. WATSON　　　　　　　　MEL L. LUTE, JR.
137 South Main Street, Suite 300　　Baker, Dublikar, Beck
Akron, OH 44308　　　　　　　　　Wiley & Mathews
　　　　　　　　　　　　　　　　　400 South Main Street
　　　　　　　　　　　　　　　　　North Canton, OH 44720

*Baldwin, J.*

{¶1}    Plaintiff-appellant Richard T. Jochum appeals from the December 20, 2012 Judgment Entry of the Stark County Court of Common Pleas granting the Motion for Summary Judgment filed by defendant-appellee Jackson Township.

STATEMENT OF THE FACTS AND CASE

{¶2}    Appellant Richard T. Jochum is the owner of real property located on Marshall Drive in Jackson Township. He has lived at the Marshall Road address in excess of 32 years.

{¶3}    In 1978, appellant brought an action against appellee, seeking to compel the township to construct a storm water pipe line to alleviate flooding at his house. As memorialized in a Judgment Entry filed in June of 1979, the Stark County Court of Common Pleas ordered the Jackson Township Trustees to furnish all pipes necessary to construct a storm water sewer pipeline along Marshall Drive and to maintain the same. A pipeline was installed in accordance with the court's order.

{¶4}    Appellant alleges that because appellee issued an excessive number of building permits for the construction of residential homes between 1979 and the present, the natural flow and absorption of natural surface water was disrupted. He further alleges that as a result, the storm water pipe located in the public right-of-way in front of his home could no longer adequately handle water flow, causing flooding of his property. Appellant installed a number of sump pumps to pump water out of his basement.  Appellee eventually installed a small pipeline in appellant's front yard and connected it to the Marshall Road pipeline to allow appellant to attach his hose from the sump pumps directly into the pipeline.

{¶5} On July 25, 2012, appellant filed a verified complaint for mandamus, trespass, nuisance and negligence against appellee. Appellant, in his complaint, alleged that appellee had failed to maintain the storm water pipeline by not replacing the Marshall Drive storm water pipes to accommodate the increase in water flow. Appellant also alleged that the resultant flooding occurring on his property constituted a taking of his property for public use. In response, appellee, on November 19, 2012, filed a Motion for Summary Judgment. Appellee, in its motion, argued, in part, that it was immune from liability under R.C. Chapter 2744. Appellant filed a response in opposition to appellee's Motion for Summary Judgment on December 6, 2012 and appellee filed a reply brief on December 18, 2012.

{¶6} Pursuant to a Judgment Entry filed on December 20, 2012, the trial court sustained appellee's Motion for Summary Judgment. The trial court, in its Judgment Entry, found that appellee was immune from liability and also that appellant's takings (mandamus) claim failed as a matter of law.

{¶7} Appellant now raises the following assignment of error on appeal:

{¶8} THE TRIAL COURT ERRED BY DETERMINING THERE WAS NO GENUINE ISSUE OF MATERIAL FACT AND THAT DEFENDANTS WERE ENTITLED TO JUDGMENT AS A MATTER OF LAW.

I

{¶9} Appellant, in his sole assignment of error, argues that the trial court erred in sustaining appellee's Motion for Summary Judgment. We disagree.

{¶10} Civ.R. 56 states, in pertinent part:

{¶11} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

{¶12}   When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000–Ohio–186, 738 N.E.2d 1243.

{¶13}   The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrates absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt,* 75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264. Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact

does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle,* 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist.1991).

{¶14} At issue in the case sub judice is whether or not appellee is immune from liability. The Political Subdivision Tort Liability Act affords political subdivisions immunity from certain types of actions. Determining whether a political subdivision is immune from liability involves a three-tiered analysis. *Cater v. Cleveland,* 83 Ohio St.3d 24,1998-Ohio-421, 697 N.E.2d 610. In the first tier, R.C. 2744.02(A) provides broad immunity to political subdivisions and states that, a "political subdivision is not liable in damages in a civil action for injury, death or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." In the second tier of the analysis, R.C. 2744.02(B) provides five exceptions that may lift the broad immunity provided for in R.C. 2744.02(A). Of relevance is R.C. 2744.02(B)(2) which provides that "[e]xcept as otherwise provided in sections 3314.07 and 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to <u>proprietary</u> functions of the political subdivisions." (Emphasis added).

{¶15} In the third tier, immunity may be reinstated if the political subdivision can demonstrate the applicability of one of the defenses found in R.C. 2744.03(A)(1) through (5).

{¶16}   There is no dispute that appellee, a township, is a political subdivision. The parties disagree as to whether or not a proprietary or governmental function is at issue in this case. R.C. 2744.01(C)(2)(l) states that a "governmental function" includes "(l) The provision or nonprovision, planning or design, construction, or reconstruction of a public improvement, including, but not limited to, a sewer system."  In turn, R.C. 2744.01(G)(2(d) states that a "proprietary function" includes "[t]he maintenance, destruction, operation, and upkeep of a sewer system."

{¶17}   The Ohio Supreme Court, in *Coleman v. Portage Cty. Engineer,* 133 Ohio St.3d 28, 2012–Ohio–3881, 975 N.E.2d 952, recently addressed the issue of what constituted a governmental function as opposed to a proprietary function in relation to a sewer system.    In *Coleman,* the plaintiffs alleged that the existing storm drainage system was unable to accommodate all of the drainage water it collected and thus overflowed, causing flooding and damage to their property. After the plaintiffs filed a complaint against the Portage County Engineer, alleging that the engineer negligently designed, constructed, and maintained the drainage system, the trial court granted the engineer's motion to dismiss the complaint on the basis of political-subdivision immunity.   The court of appeals affirmed the dismissal to the extent the claims were based on negligent design and construction, but reversed to the extent the claims were based on negligent maintenance of the sewer system.

{¶18}   The homeowners then appealed and the engineer cross-appealed. The Ohio Supreme Court  accepted the engineer's discretionary appeal which asserted the following proposition of  law: "A political subdivision's failure to upgrade the capacity of an inadequate sewer system is not a proprietary function within the meaning of R.C.

2744.01(G)(2)(d) so as to subject a political subdivision to liability under R.C. 2744.02(B)(2). The upgrade of sewer system capacity is an immune governmental function under R.C. 2744.01(C)(2)(i) [sic]."

{¶19}   In reversing the judgment of the court of appeals, the Ohio Supreme Court held that "failure to upgrade is different from the failure to maintain or upkeep." *Id.* at ¶ 24.   The Court stated that to "upgrade means '[t]o exchange a possession for one of greater value or quality; trade up." Id, citing American Heritage Unabridged Dictionary 1890 (4th Ed,. 2000).    In its decision, the Ohio Supreme Court  further stated, in relevant part, as follows:

{¶20}   "'A complaint is properly characterized as a maintenance, operation, or upkeep issue when 'remedying the sewer problem would involve little discretion but, instead, would be a matter of routine maintenance, inspection, repair, removal of obstructions, or general repair of deterioration.' *Essman [v. Portsmouth,* 4th Dist. No. 09CA3325, 2010–Ohio–4837, 2010 WL 3852247] at ¶ 32. But the complaint presents a design or construction issue if 'remedying a problem would require a [political subdivision] to, in essence, redesign or reconstruct the sewer system.' *Essman* at ¶ 32– 33.' (Brackets sic.)" *Coleman,* 133 Ohio St.3d 28, 2012–Ohio–3881, 975 N.E.2d 952, at ¶ 30, quoting *Guenther v. Springfield Twp. Trustees,* 2012–Ohio–203, 970 N.E.2d 1058, ¶ 18 (2d Dist.).

{¶21}   The Ohio Supreme Court, in *Coleman*, further held that "[a]lthough creative, [appellees'] attempt to characterize their claims as ones based on maintenance fails." Id at paragraph 31. The Court held that, for purposes of R.C.

Chapter 2744, a claim of failure to upgrade is a claim based on negligent design and construction, not negligent maintenance.

{¶22} In the case sub judice, appellant, in his complaint, alleged that appellee failed to maintain the pipeline by replacing individual pipes "to a size appropriate to manage the increased water flow." During his deposition, appellant agreed that the allegation in his complaint was that appellee had not maintained the existing pipe because appellee had not upgraded it and has not put in a bigger pipe. Appellant further indicated that he wanted appellee to install a pipe "to a size appropriate to manage the increased water flow" and, when asked how big of a pipe should be installed, stated that "[t]hat is for the hydraulics engineer to figure out." Appellant's Deposition at 30, 31. As noted by the trial court in its decision, "[w]hile Plaintiff uses the term "maintain" it is clear that Plaintiff seeks an upgrade in the form of a larger capacity pipe." Appellee is thus immune from liability with respect to appellant's claims alleging trespass, nuisance and negligence.

{¶23} Appellant further argues that the trial court erred in granting summary judgment in favor of appellee on appellant's mandamus claim. Appellant, in such claim, alleged that appellee's actions constituted a taking of appellee's property for public purposes and that appellant was entitled to compensation. According to appellant, appellee's failure to maintain the sewer system caused flooding to his property and such flooding amounts to a taking.

{¶24} We note that claims invoking the protections of the takings clause of the United States and Ohio Constitutions "are not subject to the limitations of the Political

Subdivision Tort Liability Act." *Seiler v. Norwalk,* 192 Ohio App.3d 331, 2011–Ohio–548, 949 N.E.2d 63, ¶ 41 (6th Dist. Huron).

{¶25}   Appellant claims entitlement to the requested relief in mandamus pursuant to the Takings Clause of the Ohio and United States Constitutions. Both Section 19, Article I of the Ohio Constitution and the Fourteenth and Fifteenth Amendments of the United States Constitution prohibit the government from taking private property for public use without just compensation.

{¶26}   In *State ex rel. Blank v. Beasley* 121 Ohio St.3d 301, 2009-Ohio-835, 903 N.E.2d 1196, the Ohio Supreme Court explained:

{¶27}   "We have acknowledged that Section 19, Article I of the Ohio Constitution limits compensation to those situations where private property is *taken* for public use, in contrast to the constitutions of some states, which guarantee compensation for private property that is taken for or *damaged by* public use. *State ex rel. Fejes v. Akron* (1966), 5 Ohio St.2d 47, 50, 34 O.O.2d 58, 213 N.E.2d 353, citing *McKee v. Akron* (1964), 176 Ohio St. 282, 284, 27 O.O.2d 197, 199 N.E.2d 592, overruled on other grounds by *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. Accordingly, we have construed this constitutional provision to require a property owner to prove something more than damage to his property in order to demonstrate a compensable taking. *Fejes,* at 52, 213 N.E.2d 353, 34 O.O.2d 58, 213 N.E.2d 353." Id at paragraph 17.

{¶28}   In a more recent case, the Ohio Supreme Court set forth the following two-part test for inverse-condemnation[1] claims:

{¶29}   "[N]ot every 'invasion' of private property resulting from government activity amounts to an appropriation. The line distinguishing potential physical takings from possible torts is drawn by a two-part inquiry. First, a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the 'direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action.' *Columbia Basin Orchard v. United States* (Ct.Cl.1955), 132 F.Supp. 707, 709 * * *.* * * Second, the nature and magnitude of the government action must be considered. Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner's right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value." *State ex rel. Doner v. Zody* 130 Ohio St.3d 446, 2011-Ohio- 6117, 958 N.E.2d 1235,  citing *Ridge Line, Inc. v. United States*, 346 F.3d 1346 (Fed. Cir. 2003).

{¶30}   There is no evidence that appellee intended the flooding on appellant's property. Moreover, we agree that there is no evidence that any encroachment of water onto appellant's property was foreseeable from the mere issuance of lawful building permits of from the failure to upgrade the storm sewer pipe.

{¶31}   Appellant's sole assignment of error is, therefore, overruled.

---

[1] An "inverse condemnation" is a cause of action against a governmental entity to recover the value of property taken by the same without the exercise of the power of eminent domain. See *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph 62.

{¶32}   Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Farmer, P. J. and

Wise, J. concur.


_____
HON. CRAIG R. BALDWIN


_____
HON. SHEILA G. FARMER


_____
HON. JOHN W. WISE


CRB/dr

[Cite as *Jochum v. Jackson Twp.*, 2013-Ohio-3592.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

RICHARD T. JOCHUM         :
:
     Plaintiff - Appellant      :
:
-vs-                          :            JUDGMENT ENTRY
:
JACKSON TOWNSHIP       :
:
     Defendant -Appellee     :            CASE NO. 2013CA00013

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs assessed to appellant.

_____
HON. CRAIG R. BALDWIN

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE