[Cite as *State ex rel. Young v. Pomeroy*, 2017-Ohio-8600.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO EX REL. WILLIAM A. YOUNG, | : | Case No. 16CA14 |
| Relator-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| VILLAGE OF POMEROY, OHIO, | : | |
| | | **RELEASED: 11/06/2017** |
| Respondent-Appellant. | : | |

APPEARANCES:

Lawrence E. Barbiere and Katherine L. Barbiere, Schroeder, Maundrell, Barbiere & Powers, Mason, Ohio, for appellant.

Robert R. Rittenhouse, Lavelle and Associates, Athens, Ohio, for appellee.

Harsha, J.

{¶1}    The Meigs County Court of Common Pleas granted partial summary judgment to William A. Young for a writ of mandamus compelling the Village of Pomeroy, Ohio to initiate an appropriation proceeding for the permanent taking of Young's property, which resulted from the village's installation of a sewer that is partially located on Young's property.  The village claims that the trial court erred in determining that a permanent taking occurred because there is no evidence that it intended to take the property or that the unintended encroachment on Young's property was the natural or probable result of replacing the sewer line, i.e., at best, the village and its agents negligently constructed the manhole partly outside the intended easement.

{¶2}    We reject the village's contention because this is not simply a case in which damages to a landowner's property occurred because of a temporary invasion of private property, e.g., flooding or damages occurring during construction.  Instead, the

village physically occupies Young's property by building a sewer manhole that encroaches upon it and continuing to use his property for this public purpose, i.e., the village created a permanent easement on his property. The creation, maintenance, and continued use of an easement on another person's property constitutes a direct encroachment on the person's land and is a taking.

{¶3}   The village also contends that no taking occurred because its invasion of Young's property is de minimis, i.e., the presence of the manhole partly on his property does not prevent him from using the property to the same extent he did before the manhole was installed. But the village's contention is meritless because the constitutional protection for private property rights is not dependent upon the size of the area permanently occupied.

{¶4}   The trial court did not err in concluding that the village's creation of a permanent easement on Young's property constituted a taking requiring the commencement of an appropriation proceeding. We overrule the village's assignments of error and affirm the partial summary judgment entered by the trial court.

I. FACTS

{¶5}   William Young filed an amended complaint in the Meigs County Court of Common Pleas alleging multiple claims against the village of Pomeroy, Ohio, M-E Companies, Inc. ("M.E."), and Fields Excavating, Inc. ("Fields"). Young included claims for a writ of mandamus to compel the village to commence an appropriation proceeding because its actions in installing a sewer system constituted a permanent and temporary taking of his property, i.e., Lot 41. Young also raised numerous other claims, which the

trial court stayed while the mandamus claims against the village proceeded. Young and the village moved for summary judgment on those claims.

{¶6} The parties' summary judgment evidence established the following undisputed facts. Young owns several lots in Pomeroy, including Lot 41, a.k.a. 408 Spring Avenue, and Lot 46, a.k.a. 110 Pleasant Ridge. The village had an easement on Lot 46 for the installation of the original sewer system, which it had obtained from Young's predecessors in title in 1947.

{¶7} The EPA mandated that the village separate the sanitary sewer lines from the storm lines by installing new sewer lines. In 2007, the village contracted with M.E. to provide engineering services to separate storm lines from sewer lines in the village. The village selected Fields to install sanitary sewer and lateral lines in accordance with M.E.'s engineering design.

{¶8} The village administrator acquired the easements required to install the new sewer lines from various property owners. He met with Young, who granted easements to install the sewer lines on some of his parcels—Lot 46 and Naylor's Run Memorial Playground. Young did not grant an easement to the village for Lot 41, and the village administrator assured him that no work would be done on that lot.

{¶9} Beginning in June 2013, the village and its contractors entered on Young's Lot 41. According to the village administrator, during construction a manhole had to be moved a couple feet to accommodate a storm sewer because of an angle change. Although the village believed that the manhole for its installed sewer system was still within its easement area, a 2015 survey established that part of the manhole, as well as the bell entrance to the newly constructed sewer system under it, was located on Lot

41.  Future maintenance to the manhole cover, service entrance, or sewer line will require entrance upon Lot 41, and excludes Young from this part of his property.

{¶10}  According to Young during a three-month period in 2013 the village and its agents also destroyed a sandstone retaining wall and removed soil, stones, and trees from Lot 41, resulting in damages of over $70,000.  The village denied responsibility for these damages.

{¶11}  The trial court determined that Young had established his entitlement to a writ of mandamus to compel the village to initiate an appropriation proceeding because the permanent encroachment of the manhole on Young's property (which the village did not deny) constituted "an easement on [Young's] land as legal authority so that the manhole may remain there and so that village workers may have access to it."  The trial court denied Young's remaining taking claims because the village was no longer on his land as the work had been completed, so Young had adequate remedies in the ordinary course of law for damages on his remaining claims.  The trial court entered summary judgment in favor of Young on his mandamus claim for the permanent taking of his property for the construction of the manhole and entered summary judgment in favor of the village on his remaining mandamus claims.  The trial court made an express determination that there was no just reason for delay.[1]

## II. ASSIGNMENTS OF ERROR

{¶12}  The village assigns the following errors for our review:

I.       THE TRIAL COURT ERRED IN GRANTING PARTIAL SUMMARY
         JUDGMENT TO PLAINTIFF-APPELLEE WILLIAM YOUNG.

---

[1] This constitutes a final appealable order.  Civ.R. 54(B); *see also State ex rel. Deem v. Pomeroy*, 4th Dist. Meigs No. 17CA3, 2017-Ohio-2937, ¶ 7 ("If the case involves multiple parties or multiple claims, the court's order must meet the requirements of Civ.R. 54(B) to qualify as a final, appealable order").

II.     THE TRIAL COURT ERRED IN DENYING SUMMARY JUDGMENT TO DEFENDANT-APPELLANT VILLAGE OF POMEROY, OHIO.

### III. STANDARD OF REVIEW

{¶13} The village's assignments of error challenge the trial court's grant of partial summary judgment to Young on his mandamus claim for a permanent taking of his property and the trial court's concomitant denial of its motion for summary judgment on that claim.

{¶14} Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56. *Vacha v. N. Ridgeville*, 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 19. Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made and (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56; *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 24; *Chase Home Finance, LLC v. Dunlap*, 4th Dist. Ross No. 13CA3409, 2014-Ohio-3484, ¶ 26.

{¶15} The moving party has the initial burden of informing the trial court of the basis for the motion by pointing to summary judgment evidence and identifying parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *Chase Home Finance* at ¶ 27. Once the moving party meets this initial burden, the non-moving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts

showing that there is a genuine issue remaining for trial. *Dresher* at 293, 662 N.E.2d 264.

{¶16} " 'Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged.' " *State ex rel. Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, ¶ 14, quoting *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 63, 765 N.E.2d 345 (2002). To be entitled to the writ Young had to establish a clear legal right to compel the village of Pomeroy to commence an eminent-domain action, a corresponding clear legal duty on the village to start the action, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Wasserman v. Fremont*, 140 Ohio St.3d 471, 2014-Ohio-2962, 20 N.E.3d 664, ¶ 22. Moreover, Young had to establish his entitlement to the writ by clear and convincing evidence. *Id.* at ¶ 23, citing *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus ("Relators in mandamus cases must prove their entitlement to the writ by clear and convincing evidence").

IV. LAW AND ANALYSIS

{¶17} The village contests the trial court's grant of summary judgment to Young and its denial of the village's motion for summary judgment on the same claim. Because the village's assignments of error are interrelated and not separately argued on appeal, we consider them jointly. *See, e.g., Rambacher v. Testa*, 4th Dist. Lawrence No. 13CA14, 2014-Ohio-1488, ¶ 17.

{¶18} The trial court determined that the village's encroachment on Young's Lot 41 by constructing a manhole constituted a taking. "The United States and Ohio

Constitutions guarantee that private property shall not be taken for public use without just compensation." *Shemo,* 95 Ohio St.3d at 63, 765 N.E.2d 345; Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. "The right of property is a fundamental right, and '[t]here can be no doubt that the bundle of venerable rights associated with property is strongly protected in the Ohio Constitution and must be trod upon lightly, no matter how great the weight of other forces.' " *Doner* at ¶ 52, quoting *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 38.

{¶19} The purpose of the Takings Clauses in the United States and Ohio Constitutions "is to prevent the government from 'forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *Palazzolo v. Rhode Island*, 533 U.S. 606, 617-618, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001), quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960); *see also State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, ¶ 33.

{¶20} "In order to establish a taking, a landowner must demonstrate a substantial or unreasonable interference with a property right[, which] may involve the actual physical taking of real property, or it may include the deprivation of an intangible interest in the premises." *State ex rel. OTR v. Columbus*, 76 Ohio St.3d 203, 206, 667 N.E.2d 8 (1996); *Bacak v. Trumbull Cty. Bd. of Commrs.*, 2016-Ohio-4737, 57 N.E.3d 1176, ¶ 57 (11th Dist.).

{¶21} The village asserts that the trial court erred in determining a permanent taking occurred because there is no evidence that it intended to take the property or that

the unintended encroachment on Young's property was the natural or probable result of replacing the sewer line, i.e., at best, the village and its agents negligently constructed the manhole partly outside the intended easement.

{¶22}  The village relies on the following two-part inverse-condemnation test that is mentioned by the Supreme Court of Ohio in *Doner*:

> "[N]ot every 'invasion' of private property resulting from government activity amounts to an appropriation. The line distinguishing potential physical takings from possible torts is drawn by a two-part inquiry. First, a property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the 'direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action.' *Columbia Basin Orchard v. United States* (Ct.Cl.1955), 132 F.Supp. 707, 709 * * *. * * * Second, the nature and magnitude of the government action must be considered.  Even where the effects of the government action are predictable, to constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner's right to enjoy his property for an extended period of time, rather than merely inflict an injury that reduces its value."  (Citations omitted in part.)  *Doner*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, at ¶ 64, quoting *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355-1356 (Fed.Cir.2003).

{¶23}    The village also relies on the Supreme Court of Ohio's decision in *State ex rel. Blank v. Beasley*, 121 Ohio St.3d 301, 2009-Ohio-835, 903 N.E.2d 1196, where the court held that damage to private property that was not foreseen by the state or deliberately inflicted by roadway construction did not result in compensable taking, rather the owner's remedy was by way of tort law. In *Blank* the road project caused water to back up for eight days into a building used as a market, broke a natural gas line, which caused the market to be closed for several hours, disconnected a sanitary-sewer line, causing sewage to back up into the market, and disconnected an electrical line leading to the market's signs, which were not functional until the owner repaired the

line.  The court concluded the contractor's construction activities were negligent and not intentional or deliberately inflicted to carry out the government project.  Thus the village claims that no taking occurred because it did not intend to build a manhole on Young's Lot 41 and the encroachment of the manhole on Young's property was not a direct, natural, and probable result of the installation of the new sewer system.

{¶24}  The village is mistaken.  This case involves a classic taking, i.e. a physical occupation of real property rather than a case involving temporary property limitations.  "There is no dispute that the 'classic taking [is one] in which the government directly appropriates private property for its own use.' "  *Horne v. Dept. of Agriculture*, __ U.S. __, 135 S.Ct. 2419, 2421, 192 L.Ed.2d 388 (2015), quoting *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 324, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002).  "Nor is there any dispute that, in the case of real property, such an appropriation is a *per se* taking that requires just compensation."  *Horne* at 2421, citing *Loretto v. Teleprompter Manhattan CATC Corp.*, 458 U.S. 419, 426-435, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982).  Any direct encroachment upon land that subjects it to a public use that excludes or restricts the owner's dominion and control of the property is a taking, for which the owner is guaranteed a right of compensation under Article I, Section 19 of the Ohio Constitution.  *Doner* at paragraph four of the syllabus, citing *Shemo*, 95 Ohio St.3d 59, 63, 765 N.E.2d 345, and *Norwood v. Sheen*, 126 Ohio St. 482, 186 N.E. 102 (1933).

{¶25}  Where the physical invasion constitutes a permanent occupation, as opposed to temporary limitations caused by intermittent flooding or construction damage as in *Doner* and *Blank*, the taking is established without engaging in the more

complex balancing test involved in those cases. *See Loretto* at 436, fn. 12 ("The permanence and absolute exclusivity of a physical occupation distinguish it from temporary limitations on the right to exclude. Not every physical *invasion* is a taking. As * * * the intermittent flooding cases reveal, such temporary limitations are subject to a more complex balancing process to determine whether they are a taking. The rationale is evident: they do not absolutely dispossess the owner of his rights to use, and exclude others, from his property").

{¶26} By constructing the manhole that encroaches upon Young's property, the village absolutely dispossessed him of his rights to use and exclude others from that part of his property. "The historical rule that a permanent physical occupation of another's property is a taking has more than tradition to commend it. Such an appropriation is perhaps the most serious form of invasion of an owner's property interests." *Loretto* at 435. Consequently, the village's reliance on *Doner*, *Blank*, and cases cited therein is misplaced.

{¶27} Next the village contends that no taking occurred because its invasion of Young's property is de minimis: the minimal intrusion of the manhole on his property does not prevent him from using the property to the same extent he did before the manhole was installed. The village notes that Young is receiving rental income from the new tenant on Lot 41 like the rent he received from the prior tenant before the construction.

{¶28} Nevertheless, the mere fact that the encroachment of the manhole is limited to a relatively small part of Young's property is of no consequence. "[C]onstitutional protection for the rights of private property cannot be made to depend

on the size of the area permanently occupied." *See Loretto*, 458 U.S. 419, 436, 102 S.Ct. 3164, 73 L.Ed.2d 868. In *Loretto*, the installation of a cable box "which occupies the cubic volume of a child's building block" constituted a taking. *See id.* at 436 and dissenting opinion at fn. 6. The physical appropriation of the property, no matter how small, created a per se taking, without consideration of other factors like the interference with reasonable investment-backed expectations. *Horne*, __ U.S. __, 135 S.Ct. 2419, 2427, 192 L.Ed.2d 388. We reject the village's de minimis argument.

**{¶29}** In sum, the village physically encroached upon Young's property by installing part of a manhole, which includes the bell and sewer entrance, on it. In effect the village unilaterally created an easement without Young's assent. "An easement is 'the grant of a use on the land of another.' " *Wasserman*, 140 Ohio St.3d 471, 2014-Ohio-2962, 20 N.E.2d 664, at ¶ 28, quoting *Alban v. R.K. Co.*, 15 Ohio St.2d 229, 231-232, 239 N.E.2d 22 (1968). As we recently held, "[m]anifestly, the creation, maintenance, and continued use of an easement on another person's property constitutes a direct encroachment on the person's land and constitutes a taking." *State ex rel. Jones v. Athens*, 4th Dist. Athens No. 16CA15, 2017-Ohio-7370, ¶ 41.

**{¶30}** The trial court did not err by granting partial summary judgment in favor of Young and denying the village's motion for summary judgment. We overrule the village's assignments of error.

## V. CONCLUSION

**{¶31}** The village installation of a manhole that only partially encroaches upon Young's property constituted a taking and entitled Young to extraordinary relief in mandamus to compel the village to commence an appropriation proceeding for an

easement.  Having overruled the village's assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.: Concurs in Judgment and Opinion.
McFarland, J.: Dissents.

For the Court

BY: _____
William H. Harsha, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**