[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Wasserman v. Fremont*, Slip Opinion No. 2014-Ohio-2962.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2962

THE STATE EX REL. WASSERMAN ET AL., APPELLEES, *v.* THE CITY OF FREMONT ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Wasserman v. Fremont*, Slip Opinion No. 2014-Ohio-2962.]

*Mandamus—Alleged unconstitutional taking of real property—Easement over city property for drainage of relators' farmland—City charged with violating easement by unilaterally rerouting drainage tiles, allegedly causing improper drainage and damage to relators' land—Relators failed to show violation of easement as city retained right to change route of drainage tiles—Writ to compel city to commence appropriation proceedings denied.*

(No. 2013-0535—Submitted February 25, 2014—Decided July 8, 2014.)

APPEAL from the Court of Appeals for Sandusky County,

No. S-10-031, 2013-Ohio-762.

_____

**Per Curiam.**

{¶ 1} In this appeal of an action in mandamus alleging an unconstitutional taking, we deny the motion for oral argument and reverse the judgment of the Sixth District Court of Appeals.

{¶ 2} Relators-appellees, Stanley and Kathryn Wasserman, own farmland in Sandusky County, Ohio. They are successors in interest to an easement created in 1915 for the purpose of draining what is now their farmland over land now owned by respondent-appellant city of Fremont.

{¶ 3} The Wassermans and Fremont cooperated in replacing an old drainage tile with two eight-inch plastic drainage tiles across the easement in 2005. A tile is a tube or pipe used to drain land. However, in 2009, in preparation for constructing a reservoir, Fremont replaced the two eight-inch tiles on its property with a single 12-inch drainage pipe. In laying the pipe, the city rerouted the pathway of the drainage system so that it bordered the project site rather than ran through it. Although the Wassermans apparently knew about the new pipe, they were not consulted about its installation or the reroute. They sued in mandamus, alleging an unconstitutional taking.

{¶ 4} The court of appeals held that Fremont had violated the easement by unilaterally replacing the eight-inch tiles and rerouting the drainage pathway. That court also held that the increase, if any, of water accumulation on the Wassermans' land is relevant to damages only; an increase in flooding is not evidence that a taking occurred.

{¶ 5} We find that the express easement language gave the owner of the original servient estate the right to determine the lines by which the drainage system should run through the land. The easement extends to the heirs and assigns of the original parties, and as Fremont is now the owner of the servient estate, it has the right to determine those lines. The current system continues to

serve the original purpose of the easement: draining the Wassermans' land. We therefore reverse.

**Facts**

**{¶ 6}** In 2002, Fremont purchased 146 acres of land for construction of a reservoir. This purchase made Fremont subject to a drainage easement in favor of the Wassermans' property dating back to October 15, 1915. The easement gave the Wassermans, through their predecessor in interest, the right to construct and maintain a 12-inch "field tile drain" through the land owned by the city's predecessor in interest to a certain discharge point into Minnow Creek.

**{¶ 7}** When Fremont bought the land, a 12-inch clay drainage tile originated on the Wassermans' land, ran through the Fremont property, and discharged into the creek. Historically, the Wasserman property has had problems with flooding, especially after a heavy rain. The easement provided for the use of tile to drain water from the Wasserman property through the Fremont property.

**{¶ 8}** Sometime between 2002 and 2005, the Wassermans constructed a lift station on their property to further assist with drainage by pumping excess water into the 12-inch tile. Even after installation of the lift station, storm water commonly accumulated on the property after a heavy rain.

**{¶ 9}** In 2005, in cooperation with the Wassermans, Fremont shared the cost of replacing the existing 12-inch clay tile with two plastic eight-inch tiles, placed in the same location. Fremont paid $3,824.01 for its share of replacing the tile. The Wassermans were involved in this transaction and opted to use two eight-inch corrugated tiles to allow for more cover between the tile and the soil surface to protect the tile from heavy equipment operated on Fremont's property. Even after this replacement, storm water continued to accumulate on the Wasserman property after a heavy rain.

**{¶ 10}** In 2009, Fremont decided that in order to accommodate the reservoir project, the drainage pathway had to be rerouted. Fremont's city

engineer proposed that the two eight-inch tiles be replaced with a single 12-inch high-density polyethylene smooth-walled drainage pipe, which would have 12 percent more drainage capacity than the two 8-inch tiles. The new pipe would be connected to the old tiles at the same point at which the two eight-inch pipes had been connected, but it would be rerouted to skirt the edge of the project site rather than go through it. The beginning and ending elevations of the drainage pipe remained the same. The point of discharge into Minnow Creek, according to Fremont, is now "a few feet" from where the eight-inch tiles had discharged. According to the Wassermans, the pipe was installed 100 to 500 feet north of where the two eight-inch tiles had been located.

{¶ 11} On May 26, 2009, Fremont hired Unilliance, Inc. to replace the tiles. On May 28, while the eight-inch tiles were still in place, about three inches of rain fell, causing many areas to flood, including the Wassermans' property and surrounding fields.

{¶ 12} On June 1, 2009, Unilliance began to replace the eight-inch plastic tiles with the 12-inch pipe. Rick Galford, the project superintendent for the replacement, was on site that day and saw the exposed eight-inch tiles and concluded that they were intact and functioning properly. Because Fremont was constructing a reservoir, it no longer needed to drain its property. The old tiles were removed from the city's property, and the new pipe now exclusively drains the Wasserman property. Fremont paid for the new drainage pipe and relocation costs entirely.

{¶ 13} While Stanley Wasserman was present on the project site on several occasions in mid-May and early June 2009, he was apparently not there when the new pipe was being installed, nor did he object to the installation of the pipe. On June 19, 2009, Fremont paid Unilliance $17,855 for the replacement of the two eight-inch tiles with the 12-inch pipe and installation of a catch basin.

**{¶ 14}** Fremont asserts that throughout the installation of the new pipe it made sure that it maintained and preserved the integrity of the Wassermans' easement. It constructed a catch basin at the connection point to allow the flow of water from the Wassermans' property to be monitored. Fremont asserts that the 12-inch pipe has been working properly to drain storm water from the Wasserman property across Fremont's property. The project manager states that he personally observed the water discharging into the creek after a heavy rain, consistent with the water flow into the catch basin. He has observed the 12-inch pipe working properly to drain water on several occasions.

**{¶ 15}** On the other hand, the Wassermans' witness states that because of the new arrangement, "the ability of the Wassermans to drain their property has been significantly diminished."

**{¶ 16}** The Wassermans filed a petition for a writ of mandamus on June 25, 2010, naming Fremont and its mayor (collectively, "Fremont") as respondents. The Wassermans alleged that in May 2009, the excavation process for the reservoir permanently damaged their eight-inch tiles, resulting in improper drainage of their property. Moreover, they alleged that due to Fremont's posting of "no trespassing" signs, they have been denied access to the Fremont property to repair and maintain the tiles as provided by the 1915 easement. On the basis that these actions constitute a taking of their property, the Wassermans requested that Fremont be compelled to commence eminent-domain proceedings to compensate them for their loss.

**{¶ 17}** The parties filed merit briefs, and the court of appeals held that the Wassermans were entitled to a writ ordering Fremont to file an eminent-domain action to determine whether a taking had actually occurred and, if so, how much compensation is due. *State ex rel. Wasserman v. Fremont*, 6th Dist. Sandusky No. S-10-031, 2011-Ohio-1269. Fremont appealed, and we held that the Wassermans had to establish, rather than just allege, a taking before being able to

compel an eminent-domain action. *State ex rel. Wasserman v. Fremont*, 131 Ohio St.3d 52, 2012-Ohio-27, 960 N.E.2d 449.

{¶ 18} On remand, the parties submitted evidence in support of their positions. The court of appeals ruled on February 13, 2013, that a taking had occurred when Fremont unilaterally removed the two eight-inch drainage tiles and destroyed the pathway of the 1915 easement to construct the reservoir. The court granted the writ and ordered Fremont to commence eminent-domain proceedings. Fremont appealed.

### Legal Analysis

**Oral argument**

{¶ 19} Fremont has moved for oral argument.

{¶ 20} In cases in which oral argument is not mandatory—such as cases originating in this court or direct appeals from cases originating in a court of appeals—we have discretion to grant oral argument, and " 'in exercising this discretion, we consider whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among courts of appeals.' " *State ex rel. Jean–Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, ¶ 10, quoting *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 15.

{¶ 21} Although, as Fremont points out, this case involves the constitutional issue of a taking of property, we find that the parties' briefs and evidence are sufficient to resolve the issues raised in this appeal. *State ex rel. Swanson v. Maier,* 137 Ohio St.3d 400, 2013-Ohio-4767, 999 N.E.2d 639, ¶ 19. Therefore, we deny oral argument and proceed to the merits.

**Mandamus**

{¶ 22} " 'Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private

property is alleged.' " *State ex rel. Gilbert v. Cincinnati*, 125 Ohio St.3d 385, 2010-Ohio-1473, 928 N.E.2d 706, ¶ 14, quoting *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 63, 765 N.E.2d 345 (2002). To be entitled to a writ, the Wassermans must establish a clear legal right to compel Fremont to start an eminent-domain action, a legal duty on the part of Fremont to start such an action, and the lack of an adequate remedy in the ordinary course of law. *Gilbert* at ¶ 15, citing *State ex rel. Shelly Materials, Inc. v. Clark Cty. Bd. of Commrs.*, 115 Ohio St.3d 337, 2007-Ohio-5022, 875 N.E.2d 59, ¶ 15.

{¶ 23} Moreover, "[t]he Wassermans must establish their entitlement to the writ by clear and convincing evidence." *State ex rel. Wasserman v. Fremont*, 131 Ohio St.3d 52, 2012-Ohio-27, 960 N.E.2d 449, ¶ 4, citing *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus.

**The Wassermans are not entitled to a writ ordering an eminent-domain action**

{¶ 24} The court of appeals held that a taking had occurred because Fremont had unilaterally destroyed and rerouted the original pathway of the 1915 drainage easement. Fremont appealed this holding.

{¶ 25} The court of appeals held that its conclusion that a taking had occurred had nothing to do with the fact that Fremont replaced the two eight-inch tiles with the single 12-inch pipe, stating that "[s]uch actions, and any subsequent increase in water accumulation on [the Wassermans'] land as a result, go to the issue of damages and not whether a taking occurred." 2013-Ohio-762, at ¶ 23. The Wassermans did not cross-appeal this holding. Therefore, the Wassermans have relinquished any argument that excess water on their land itself constituted a taking.

{¶ 26} The court of appeals also held that the evidence supporting the taking does not include the no-trespassing signs placed by Fremont at the entrance

to the reservoir property, because the Wassermans "presented no evidence, beyond speculation, that respondents intend to exclude them from entering onto the property." *Id.*, fn. 2. The Wassermans did not cross-appeal this holding either. They therefore are precluded from arguing that they cannot enter the property to inspect and maintain the new 12-inch pipe.

{¶ 27} Therefore, the question remaining here is a narrow one: Did Fremont violate the easement so as to effect a taking by rerouting the original pathway of the 1915 easement, thereby justifying an eminent-domain action?

{¶ 28} The answer to the question depends first on the language of the original easement. An easement is "the grant of a use on the land of another." *Alban v. R.K. Co.*, 15 Ohio St.2d 229, 231-232, 239 N.E.2d 22 (1968). When an easement is created by an express grant, as here, the extent of and limitations on the use of the land depend on the language in the grant. *Id.* at 232. When the terms in an easement are clear and unambiguous, a court cannot create a new agreement by finding an intent not expressed in the clear language employed by the parties. *See Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978). The language of the easement, considered in light of the surrounding circumstances, is the best indication of the extent and limitations of the easement. *Lakewood Homes, Inc. v. BP Oil, Inc.*, 3d Dist. Hancock No. 5-98-29, 2 (Aug. 26, 1999), citing *Apel v. Katz*, 83 Ohio St.3d 11, 17, 697 N.E.2d 600 (1998).

{¶ 29} Neither side in this dispute focuses on the express language of the easement in the briefs. The Wassermans concentrate on Fremont's alleged "obliteration" of the easement when it destroyed the eight-inch drainage tiles and rerouted the drainage lines.

{¶ 30} Fremont relies not on the easement language, but on case law permitting the rerouting of easements for ingress and egress to public roads. Neither cited case relies on the language of the easement. *State ex rel. Preschool Dev., Ltd. v. Springboro*, 99 Ohio St.3d 347, 2003-Ohio-3999, 792 N.E.2d 721;

*State ex rel. Noga v. Masheter*, 42 Ohio St.2d 471, 330 N.E.2d 439 (1975). Reference to the language of the easement in these cases was not necessary to their resolution. Ingress and egress to the road in each case were simple matters of access. Rerouting did not destroy the easement; access was retained, but by a different path. Drainage is a more complicated proposition. Rerouting may have destructive consequences.

**{¶ 31}** Here, the easement has several express terms pertinent to the dispute:

> [The Wassermans' predecessor in interest] may construct and maintain a twelve (12) inch field tile drain from the west line of said lands of [Fremont's predecessor in interest] through her said lands on lines and at a depth to be fixed by her or her agents, and emptying into [Minnow] creek at a point about fifty (50) feet south east of the point where said creek crosses said right of way and enters her lands; that of the cost of the tile and construction of such tile ditch the said [Fremont's predecessor] shall pay $118.00 and after the same has been constructed the cost of maintaining and keeping the same in repair and any damages arising to the lands of [Fremont's predecessor] or to crops growing thereon from defects therein shall be borne and paid by the parties hereto as follows:
>
> > [Wasserman predecessor] two-thirds (2/3) thereof.
> > [Fremont predecessor] one-third (1/3) thereof.
> > * * *
>
> This contract shall extend to the heirs and assigns of the parties hereto and shall continue in force forever unless terminated as in herein before provided.

**{¶ 32}** The pertinent features of the easement are, first, that the Wassermans' predecessor had the right to "construct and maintain" a drainage tile, but that Fremont's predecessor had the right to determine the path of the drainage tile "on lines and at a depth to be fixed by her." Second, the end point of the drainage tile was to empty into the creek about 50 feet southeast of where the creek enters Fremont's land. Finally, the easement "shall extend to the heirs and assigns of the parties."

**{¶ 33}** Under the express terms of the agreement, Fremont's predecessor had the right to fix the line and depth of the original drainage tile. The question here is whether the right to fix the line and depth means that the servient estate holder retained the right to change that path or whether once set, the path was to remain fixed. The terms of the easement are not clear on this point. An easement should be interpreted to give effect to the language used in the instrument and to carry out the purpose for which it was created. 1 Restatement of the Law 3d, Property, Servitudes, Section 4.1 (2000). The purpose of the easement in this case was and remains to drain water from the Wasserman property into Minnow Creek. If the rerouted pipe still accomplishes that purpose, the rerouting does not violate the purpose of the easement. Therefore, we hold that the right of Fremont's predecessor to fix the line and depth of the tile remained with the heirs and assigns, and that right includes the right to reroute the line as long as the line continues to fulfill its primary purpose, which is to drain the Wassermans' land.

**{¶ 34}** Despite complaints by the Wassermans to the contrary, the evidence does not show that the new arrangement fails to drain the land. Fremont provided the affidavit testimony of various engineers and others who worked on the project rerouting the drainage. They testify that (1) the Wasserman property was always prone to flooding during and after heavy rains, and in fact the Wassermans had installed a lift station to force water from their land into the

drainage tiles, (2) the new 12-inch pipe carries more water than the two eight-inch pipes, and the 12-inch pipe is devoted exclusively to draining the Wassermans' land instead of draining both properties as the previous arrangement had done, and (3) on multiple inspections after installation, the 12-inch pipe was seen to be functioning properly and discharging water from the Wasserman property.

{¶ 35} The Wassermans provided photographs of Fremont's construction of the reservoir, photographs of the destroyed eight-inch tiles, and a photograph "depicting the poor drainage on the Wassermans' farmland during the City's reservoir construction." The photographs of the flooded farm land were taken on May 29, 2009, one day after a heavy three-inch rain, and *before* the eight-inch tiles had been removed and replaced. If anything, these photographs show how flood-prone the land is and how poorly the eight-inch tiles and the lift station were working to drain the land. The Wassermans also provide photographs of the 12-inch pipe partly submerged and discharging water.

{¶ 36} None of this evidence proves that the new 12-inch pipe is draining the land less well than the previous eight-inch tiles did, but only that the Wassermans' flood-prone land is still flood-prone, despite the lift station and additional capacity from the 12-inch pipe. The main evidence they have that the new arrangement is not draining their land as well as the eight-inch tiles is the affidavit of Joseph Picciuto, a surveyor and estimator who had mapped the installation of the original eight-inch tiles in 2005. He visited the reservoir property once in 2012. He states that based on his experience, the 12-inch pipe is not draining the land as well as the previous arrangement.

{¶ 37} The Wassermans also submitted a handwritten document setting out damage figures, asserting, for instance, that the lift-station pump had to work more days in 2010 and 2011 than in previous years. If true, this assertion shows only that the Wassermans had to pump more water from their land into the pipe, not that the drain pipe itself was not working or could not accommodate the extra

water. Moreover, there is no indication in the record of the total rainfall in those years compared with previous years. Without that information, it is impossible to know whether the extra pumping was caused by the change in the drainage system or just excess rainfall and flooding.

{¶ 38} In short, the testimony of at least two engineers connected with the project is that the 12-inch pipe has more capacity than the two eight-inch tiles, that it was installed properly, and that multiple inspections showed that it was working properly after installation and rerouting. This cumulation of evidence outweighs the statement of a surveyor who inspected the site only once after the installation of the 12-inch pipe and opined that it does not work as well as the eight-inch tiles.

{¶ 39} Therefore, the Wassermans have failed to show by clear and convincing evidence that the rerouting of the easement violated the terms of the easement or interfered with the easement's primary purpose: to drain the Wasserman land.

{¶ 40} The second pertinent feature of the express easement is that the tile must empty into the creek "at a point about fifty (50) feet south east of the point where said creek crosses said right of way and enters" what is now the Fremont property. Thus, the easement specifies where the tile or pipe is to discharge water into the creek. However, neither party has provided any evidence of exactly where that point was in 1915 or is on the current landscape or whether the two eight-inch tiles placed in 2005 discharged at or near that point. If the Wassermans had shown that the eight-inch tiles discharged at the point described in the 1915 easement and that Fremont's rerouting of the drainage pipe changed the discharge point significantly, they might have had an argument for violation of the easement. Without such a showing, however, the Wassermans have failed to prove a violation of this term of the easement.

**{¶ 41}** We hold that Fremont did not violate the easement, as it retained the right to change the route of the drainage tile as long as it continued to drain the Wassermans' land, and the Wassermans knew about the rerouting at the time it was happening.

**{¶ 42}** The Wassermans also assert a physical taking of their personal property, that is, the eight-inch tiles that Fremont removed. When real property is appropriated by eminent domain, damages for loss of personal property may be recoverable in an appropriation proceeding if the personal property is so affixed to the real property as to be considered a part thereof. *Masheter v. Boehm*, 37 Ohio St.2d 68, 307 N.E.2d 533 (1974). But because we decide today that no taking has occurred, no appropriation proceeding is required, and the loss is not recoverable. While the Wassermans may have a cause of action against Fremont for the loss of the tiles (for which they partially paid), the loss cannot be remedied through appropriation in this case.

**Conclusion**

**{¶ 43}** In sum, the Wassermans have failed to show by clear and convincing evidence that a taking of their property has occurred. The servient estate, now owned by Fremont, retained the right to fix the route of the drainage easement, and therefore had the right to change it. We therefore reverse.

Judgment reversed.

O'CONNOR, C.J., and LANZINGER, J., concur.

KENNEDY and FRENCH, JJ., concur in judgment only.

PFEIFER, O'DONNELL, and O'NEILL, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

**{¶ 44}** The majority opinion states that "[t]he purpose of the easement in this case was and remains to drain water from the Wasserman property into Minnow Creek. If the rerouted pipe still accomplishes that purpose, the rerouting

13

does not violate the purpose of the easement." Majority opinion at ¶ 33. But if the rerouting causes the pipe to carry water less quickly, then the purpose of the easement has been violated.

{¶ 45} It is obvious that when all other factors (pressure, friction, etc.) are the same, but the length of pipe is increased, the water will drain more slowly. In my opinion, the rerouting has diminished the usefulness of the drainage, thereby affecting the purpose of the easement.

{¶ 46} I would affirm the judgment of the court of appeals. I dissent.

O'DONNELL and O'NEILL, JJ., concur in the foregoing opinion.

_____

Cheetwood, Davies, Ruck & Speweik, Ltd., Corey J. Speweik, and Theresa A. Charters, for appellees.

James F. Melle, Law Director, for appellants.

_____