[Cite as *Prince v. Harper*, 2024-Ohio-521.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

MARK PRINCE,                                                :

                              Plaintiff-Appellant,     :     Case
                              No.  23CA9

                              v.                        :

ANGELA M. HARPER, et al.,        :     DECISION AND JUDGMENT ENTRY

                              Defendants-Appellees,     :
_____

APPEARANCES:

Eric J. Wittenberg and Joshua S. Nagy, Dublin, Ohio, for
appellant.

Thomas M. Spetnagel, Chillicothe, Ohio, for appellee.
_____
CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:2-8-24
ABELE, J.

{¶1}  This is an appeal from a Ross County Common Pleas

Court judgment in favor of Angela M. Harper and Shawn R. Harper,

defendants below and appellees herein.  Mark Prince, plaintiff

below and appellant herein, assigns the following errors for

review:

         FIRST ASSIGNMENT OF ERROR:

         "THE TRIAL COURT ERRED IN DENYING THE
         PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT."

         SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN GRANTING JUDGMENT
IN FAVOR OF THE DEFENDANTS IN THIS CASE."

**{¶2}** This appeal arises from a dispute regarding a 30-foot-wide easement appellant claims to hold over appellees' property. On June 20, 2019, appellant filed a complaint to establish his right to the easement. Appellant sought a declaratory judgment that "the Right-of-Way is valid and subsisting, is a necessary means of ingress and egress for the Parcel and that the Defendants have no right to deprive the Plaintiff of use of said Right-of-Way." Appellant further requested temporary, preliminary, and permanent injunctions, and sought to eject appellees from the right-of-way.

**{¶3}** On July 2, 2019, the parties entered into an agreed preliminary injunction that enjoined appellees from interfering with or denying appellant access to the alleged right-of-way until further order of the court.

**{¶4}** On October 11, 2022, the parties agreed to submit the matter to the trial court upon stipulations. One stipulation stated "[t]here are no questions of material fact in dispute between the parties as to Plaintiff's claim for an Easement by Grant, and as to that claim alone." The parties stipulated that a question of law remained regarding the proper interpretation of the easement as (1) "a roadway to Plaintiff's parcel from

3

County Road 550 that crosses over the east side of Defendants'
parcel," or (2) "a roadway to the southeast corner of
Defendants' parcel from County Road 550, that does not reach
Plaintiffs' parcel."

{¶5}  The parties agreed that on November 25, 1892, "a
roadway easement was recorded in the Ross County records,
establishing a dominant estate for the approximately 100-acre
parcel of Deborah Carter, and a servient estate on multiple
parcels, including the approximately 66-acre, 3 rood parcel
owned by Bertie H. Ware."[1]  The parties agreed that this easement
is described as follows:

> The parties of the first part hereby grant the
> privilege of a gateway to the party of the second part
> leading from the Herods Creek and Frankfort Turnpike,
> running north to the lands of Deborah Carter not
> exceeding thirty (30) feet in width along the following
> described route to wit: a strip of land for the purposes
> of a roadway thirty feet in width along the east side of
> the following described tract of land belonging to
> Bertie H. Ware.  "Beginning at an elm, black oak, and
> hickory corner to Mary Sandford [sic] thence .... (The
> foregoing description being taken from a quit claim deed
> made by Holcomb Porter, Nadie Porter, Annie P. Porter,
> J.W. Porter, Sallie M. Wiley, and L.E. Wiley to Bertie
> Ware on February 7th, 1891 and is recorded in the Records
> of Deeds of Ross County Vol. 111, Page 446).

---

[1] The record contains various spellings of words used
throughout this opinion, with "rood" and "rod" being two of
those words.  To the extent that the record does not clarify
which versions are the correct spelling, this opinion uses the
spellings as they appear in the record.

ROSS, 23CA9

From the South East corner of the above described tract of land along and over the following described route to wit: Beginning at the corner of Mary Sanford and Tighlman Porter and Gertrude Porter in a line of David A. Abernathy, where an elm black oak and hickory stand, thence with the line of David A. Abernathy S. 24 W. 100 poles to a stone, thence South 9-1/2 E, with said line 45 poles to a stone, thence with the line of Scioto Abernathy S. 48 West 42.48 poles to a stone in the center of the Frankfort and Herods Creek Turnpike, thence westerly to a point within thirty (30) feet of the line of Da. Abernathy, thence N. 9-1/2 W, about 45 rods thence N. 24 E about 100-1/2 poles to the line between Mary Sanford and Tighlman Porter and Gertrude Porter, thence with their line thirty (30) feet wide from the beginning to the end, between the said described lines.

Being a strip of land deeded to Tighlman Porter for the purpose of a road way, by Mary Sanford, John A. Sanford, Ella [] Sanford, Gertrude Devine, Michael Devine, and Jennie Devine, by a deed dated Feb. 19, 1889 and recorded in record of Deeds of Ross County, Vol. 101, Page 544 and deeded by Tighlman Porter, subject to his life estate therein, to Bertie H. Ware, by a deed dated Feb. 7, 1891 and recorded in record of deeds of Ross County, Ohio Vol. 111, age 447.

The road way as described above is situated in Lucas Survey No. 404 in Concord Township, Ross County, Ohio. Said road way as above described to be used by the said Deborah Carter or any future owner of said lands or occupier of said lands as a passage way or road way to and from said lands of Deborah Carter to the Frankfort and Herods Creek Turnpike in perpetuity. It is further agreed that the said Deborah Carter or any occupier or owner of her said lands shall help to keep said passage way of road way in repair and on passing through the gates thereon to close the same after them. The said Deborah Carter the party of the second part for and in consideration of the benefits and privileges of said gate way aforesaid agrees to pay the sum of one hundred and fifty ($150.00) dollars and has executed a promissory note to the parties of the first part for said amount ($150.00) payable in one year from the date hereof with 6% interest from date.

{¶6} The stipulations further stated that the "Frankfort and Herods Creek Turnpike identified in the above description is today known as Ross County Road 550."

{¶7} The parties further agreed that an easement also is set forth in a February 17, 1902 deed from Deborah Carter's heirs to Strawder Pancake, and this easement is "functionally equivalent" to the 1892 easement. Appellant's parcel is the same 100-acre parcel described in the Deborah Carter and Strawder Pancake deeds. The legal description of appellant's parcel states in part:

> containing one hundred acres, more or less, being the same premises conveyed to Strawder M. Pancake by the heirs of Deborah Carter . . . recorded in Vol. 136, Page 483 Ross County Deed Records . . . and also a thirty foot roadway conveyed to Strawder M. Pancake by the heirs at law of Deborah Carter by deed dated February 17, 1902, and recorded in Vol. 136, Page 485, Ross County Deed Records.

{¶8} Appellees' parcel was created in 2018 by subdividing Gwendolyn Harper's parcel. Before subdividing this parcel, Harper's parcel was the same 66-acre parcel that formerly belonged to Bertie Ware.

{¶9} The parties agreed that appellant's parcel is the dominant estate and appellees' parcel is the servient estate. They did not, however, agree on the proper interpretation of the easement.

{¶10} To support their interpretation of the easement, appellees relied upon a certificate of title that attorney Joseph Motes prepared. Motes concluded that "[t]he easement . . . begins at the southeast corner of the 66-acre, 3-rood property that is the progenitor of [appellees'] 8.701 tract, and then heads South, ultimately reaching the Frankfort and Herrods [sic] Creek Turnpike, which is now [Ross County Road] 550." Motes further stated that, although the easement states "it is along the East side of the 66-acre, 3-rood property that is the progenitor of [appellees'] 8.701-acre tract, it is not." Motes, however, did not elaborate upon this latter conclusion.

{¶11} Appellant, on the other hand, interpreted the easement to mean that it reaches his parcel and does not begin at the southeast corner of appellees' parcel. Appellant asserted that the easement's language unambiguously reflects the parties' intent to give Deborah Carter and any future owners or occupiers of the land "a passage way or road way from said lands of Deborah Carter to the Frankfort and Herods Creek Turnpike in perpetuity." Appellant believes that the easement unambiguously establishes a 30-foot-wide roadway along the east side of appellees' property.

{¶12} The parties also submitted stipulated exhibits, including Motes' deposition testimony. Motes stated that when he prepared his title certificate, he reviewed an 1875 atlas, a 1902 map of Concord Township, recent and historical aerial photographs, and the grantor and grantee indices. He stated that Deed Volume 136, Page 485 describes an easement encumbering the 66-acre parcel that is the progenitor of appellees' property. Motes concluded that the easement "begins at the southeast corner of Bertie Ware's property, the progenitor of [appellees'] property, and runs generally in a southern direction down to what is now County Road 550." Motes further concluded that the easement "does not appear to reach [appellant]'s 100-acre tract, because [the] easement begins at the southeast corner of [the] 66-acre * * * property that's [the] progenitor of [appellees'] tract and then heads south."

{¶13} Motes explained that, if the easement begins at the southeast corner of appellees' property and heads south, "it can't reach [appellant's] property to the north." He reached this conclusion even though the easement states that it leads "from the Herods Creek and Frankfort Turnpike Road running north to the lands of Strawder Pancake along the following described route." Motes indicated that one of the first paragraphs

ROSS, 23CA9

contained in the parties' stipulated exhibit describes "the tract of land that is the servient tenement" and the next paragraph describes the easement.

{¶14} On March 6, 2023, the trial court granted judgment in appellees' favor and found that appellant "does not have a valid and/or subsisting right-of-way/easement over and through [appellees'] property." Consequently, the court vacated the agreed preliminary injunction and dismissed appellant's complaint. This appeal followed.

I

{¶15} For ease of discussion, we first consider appellant's second assignment of error. In his second assignment of error, appellant asserts that the trial court erred by granting judgment in appellees' favor. More specifically, appellant contends that the court erred as a matter of law by determining that the deed language does not create an easement that allows appellant to traverse appellees' property to reach County Route 550. Appellant further asserts that the trial court improperly relied upon expert testimony regarding the interpretation of the easement. Appellant claims that experts may not testify on questions of law like the interpretation of legal instruments.

**{¶16}** Appellees respond that because appellant failed to file a Civ.R. 52 request for findings of fact and conclusions of law, this court should presume that the trial court "considered and weighed all the stipulated facts and documentary evidence * * * and correctly followed the law applicable to this case." Appellees further argue that the trial court had discretion to consider expert testimony. They assert that the easement has two reasonable interpretations and the trial court had discretion to accept the interpretation that Motes offered.

**{¶17}** We first observe that the parties do not agree upon the standard of review that governs our disposition of appellant's second assignment of error. Appellant contends that his second assignment of error involves a question of law subject to de-novo review. Appellees, however, propose that we apply the manifest-weight-of-the-evidence standard of review to the trial court's judgment and the abuse-of-discretion standard of review to the court's decision to consider expert testimony.

**{¶18}** This court previously stated that when parties submit a matter to a trial court for decision using stipulated facts, as the parties have done in the case sub judice, appellate "[r]eview of a trial court's application of the law to stipulated facts is de novo." *Brown v. Gallagher*, 2013-Ohio-

2323, 993 N.E.2d 415, ¶ 7 (4th Dist.); *accord Clark v. Butler*, 4th Dist. Ross No. 12CA3315, 2012-Ohio-5618, ¶ 9, 12, fn.2 ("[b]ecause this case was decided on stipulated facts, it does not lend itself to a 'manifest weight of the evidence' standard of review"); *e.g., Wayne Mut. Ins. Co. v. Parks*, 9th Dist. Summit No. 20945, 2002-Ohio-3990, ¶ 13 (applying de-novo review when parties submitted stipulated facts); *Iiams v. Corp. Support, Inc.*, 98 Ohio App.3d 477, 480, 648 N.E.2d 902, (3rd Dist.1994) (applying de-novo standard and declining to apply manifest-weight standard when parties had stipulated facts) *Cincinnati Ins. Co. v. Slutz*, 5th Dist. Stark No. CA-7109, 1987 WL 18538, *1 (Oct. 13, 1987) ("the prevailing rule is that the appellate court stands in the shoes of the trial court when reviewing appeals from judgments rendered solely on stipulated facts"); *Poe v. Sheehan*, 106 Ohio App. 413, 422, 151 N.E.2d 660 (8th Dist.1958) (when parties try case using stipulated facts, appellate court's function "is to determine whether the court's conclusions of law are supported by the agreed facts").

{¶19} Accordingly, we do not afford any deference to the trial court's decision and, instead, conduct our own independent review. *Clark* at ¶ 9. After our review in the case at bar, we agree with appellant that the plain language of the easement

ROSS, 23CA9

reveals that he possesses an easement that runs across appellees' property to County Road 550.

**{¶20}** "An easement is a non-possessory property interest in the land of another." *Pomante v. Marathon Ashland Pipe Line, LLC*, 187 Ohio App.3d 731, 2010-Ohio-1823, 933 N.E.2d 831, ¶ 7 (10th Dist.), citing *Andrews v. Columbia Gas Transm. Corp.*, 544 F.3d 618, 624 (6th Cir.2008). An easement "entitles the owner of the easement, the dominant estate, to a limited use of the land in which the interest exists, the servient estate." *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, L.L.C.*, 138 Ohio App.3d 57, 66, 740 N.E.2d 328 (4th Dist.2000), citing *Alban v. R.K. Co.*, 15 Ohio St.2d 229, 231, 239 N.E.2d 22 (1968).

**{¶21}** "When an easement is created by an express grant, * * * the extent of and limitations on the use of the land depend on the language in the grant." *State ex rel. Wasserman v. Fremont*, 140 Ohio St.3d 471, 2014-Ohio-2962, 20 N.E.3d 664, ¶ 28. "The language of the easement, considered in light of the surrounding circumstances, is the best indication of the extent and limitations of the easement." *Id.* (citations omitted). Thus, courts first must review the "plain and ordinary meaning" of the language used in the easement "unless manifest absurdity results or unless some other meaning is clearly intended from the face

or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 245-46, 374 N.E.2d 146 (1978); *see Koprivec v. Rails-to-Trails of Wayne Cnty.*, 153 Ohio St.3d 137, 2018-Ohio-465, 102 N.E.3d 444, ¶ 24 (courts must interpret deeds using plain language contained in the document).

**{¶22}** Furthermore, when the language of the easement is clear and unambiguous, courts "cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Buckeye Pipe Line Co.*, 53 Ohio St.2d at 246; *accord Esteph v. Grumm*, 175 Ohio App.3d 516, 2008-Ohio-1121, 887 N.E.2d 1248, ¶ 10 (4th Dist.) ("[w]hen the language granting an easement is clear and the delineation of the easement is unambiguous, we presume that the deed expresses the intent of the parties, and we need not go beyond that language in determining the scope of the easement"); *Murray v. Lyon*, 95 Ohio App.3d 215, 219, 642 N.E.2d 41 (9th Dist.1994) ("[i]f the intent is plain from the face of the document, then it is not necessary to resort to rules of construction to determine the easement's effect"). An easement "is unambiguous if it can be given a definite legal meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11 (citation omitted).

**{¶23}** To determine whether language is unambiguous courts must consider the document "'as a whole,'" and not simply "'detached or isolated parts thereof.'" *Sauer v. Crews*, 140 Ohio St.3d 314, 2014-Ohio-3655, 18 N.E.3d 410, ¶ 13, quoting *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 172, 436 N.E.2d 1347 (1982). Moreover, courts should not "zero[] in on the meaning of [a] word or phrase in isolation." *Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St.3d 199, 2018-Ohio-5207, 124 N.E.3d 803, ¶ 11. Rather, courts should eschew "hyperliteral" readings and, again, consider the text as a whole. *Id.* "Only when a definitive meaning proves elusive should rules for construing ambiguous language be employed." *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶ 11, citing *Galatis* at ¶ 11. The language of an easement may be ambiguous if it is "susceptible to more than one reasonable interpretation." *Motorists Mut. Ins. Co. v. Ironics, Inc.*, 168 Ohio St.3d 467, 2022-Ohio-841, 200 N.E.3d 149 ¶ 68.

**{¶24}** It is important to recognize, however, that the language of an easement does not become ambiguous simply because litigants propose competing interpretations. *Corder v. Ohio Edison Co.*, 162 Ohio St.3d 639, 2020-Ohio-5220, 166 N.E.3d 1180, ¶ 38 (DeWine, J., concurring) ("mere fact that there are

competing interpretations of a legal text doesn't mean that the text is ambiguous"). Instead, the competing readings may not be "equally plausible," and one reading may be "more natural." *Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 41, 128 S.Ct. 2326, 171 L.Ed.2d 203 (2008). A competing reading may be less plausible, for example, if it "strain[s] ordinary usage or conflict[s] with the structure or purpose of the [document] as a whole." *Corder* at ¶ 38 (DeWine, J., concurring), citing *Piccadilly Cafeterias,* 554 U.S. at 41. Competing readings, therefore, generally do not automatically render a legal document ambiguous. *See id.* (courts can declare language ambiguous "[o]nly when a court has concluded that no one reading of the language is superior to the other possibilities").

**{¶25}** "[T]he initial determination of whether an ambiguity exists presents an abstract legal question, which [appellate courts] review on a de novo basis." *Pierron v. Pierron*, 4th Dist. Scioto No. 07CA3153, 2008-Ohio-1286, ¶ 8, citing *Stewart v. Stewart*, 4th Dist. Ross No. 92CA1885, 1992 WL 388546, *2 (Dec. 22, 1992); *accord Ayersville Water & Sewer Dist. v. Geiger*, 3rd Dist. Defiance No. 4-11-19, 2012-Ohio-2689, ¶ 31 ("[w]hether the easement's language was sufficiently definite to

establish its location is a question of law that is reviewed de novo upon appeal"). If ambiguity exists, "then the determination of what the actual terms were becomes a question of fact." *Lake Erie Towing v. Troike*, 6th Dist. Erie No. E-05-062, 2006-Ohio-5115, ¶13. In the absence of ambiguity, the interpretation of an express easement is a question of law subject to de-novo review. *Corder* at ¶ 25, citing *Buckeye Pipe Line Co.*, paragraph one of the syllabus.

{¶26} In the case before us, we do not believe that the language of the easement is ambiguous. Instead, the plain language of the easement shows that the parties intended to give Deborah Carter, and subsequent owners of the land, an easement that crosses along the east side of the original Ware 66-acre parcel and continues to County Road 550.

{¶27} According to the parties' stipulations, the first paragraph of language at issue reads:

> The parties of the first part hereby grant the privilege of a gateway to the party of the second part leading from the Herods Creek and Frankfort Turnpike, running north to the lands of Deborah Carter not exceeding thirty (30) feet in width along the following described route to wit: a strip of land for the purposes of a roadway thirty feet in width along the east side of the following described tract of land belonging to Bertie H. Ware. "Beginning at an elm, black oak, and hickory corner to Mary Sandford [sic] thence .... (The foregoing description being taken from a quit claim deed made by Holcomb Porter, Nadie Porter, Annie P. Porter,

ROSS, 23CA9

J.W. Porter, Sallie M. Wiley, and L.E. Wiley to Bertie
Ware on February 7th, 1891 and is recorded in the Records
of Deeds of Ross County Vol. 111, Page 446).

**{¶28}** This first paragraph describes the essential purpose

of the easement: to grant the party of the second part (i.e.,

Deborah Carter) a gateway that leads from the former Herods

Creek and Frankfort Turnpike (and, according to the parties'

stipulations, the current County Road 550) and continues north

to Deborah Carter's property (now, appellant's property).

**{¶29}** The first paragraph also describes the gateway's

route. It states that the gateway is "along the following

described route to wit: a strip of land for the purposes of a

roadway thirty feet in width along the east side of the

following described tract of land belonging to Bertie H. Ware."

This language unambiguously defines the route of the gateway as

beginning with a 30-foot-wide easement along the east side of

the Ware tract. The next sentence contains the legal

description of the tract that is subject to this 30-foot-wide

easement, i.e., Ware's 66-acre parcel.

**{¶30}** The second paragraph continues to describe the

gateway's route and states:

From the South East corner of the above described
tract of land along and over the following described
route to wit: Beginning at the corner of Mary Sanford
and Tighlman Porter and Gertrude Porter in a line of

David A. Abernathy, where an elm black oak and hickory stand, thence with the line of David A. Abernathy S. 24 W. 100 poles to a stone, thence South 9-1/2 E, with said line 45 poles to a stone, thence with the line of Scioto Abernathy S. 48 West 42.48 poles to a stone in the center of the Frankfort and Herods Creek Turnpike, thence westerly to a point within thirty (30) feet of the line of Da. Abernathy, thence N. 9-1/2 W, about 45 rods thence N. 24 E about 100-1/2 poles to the line between Mary Sanford and Tighlman Porter and Gertrude Porter, thence with their line thirty (30) feet wide from the beginning to the end, between the said described lines.

{¶31} The phrase, "From the South East corner of the above described tract of land," indicates that the easement continues from the southeast corner of the Ware tract, which is "the above described tract of land." Then, the easement proceeds "along and over the following described route." The "following described route" defines the easement as "[b]eginning at the corner of Mary Sanford and Tighlman Porter and Gertrude Porter in a line of David A. Abernathy, where an elm black oak and hickory stand, thence with the line of David A. Abernathy S. 24 W. 100 poles to a stone, thence South 9-1/2 E, with said line 45 poles to a stone, thence with the line of Scioto Abernathy S. 48 West 42.48 poles to a stone in the center of the Frankfort and Herods Creek Turnpike." This language describes the easement's southerly route towards the Frankfort and Herods Creek Turnpike (now, County Road 550).

{¶32} Next, the easement describes the roadway's northerly return route. According to the parties' Stipulation 13, after the easement reaches the center of the former Frankfort and Herods Creek Turnpike, it continues "westerly to a point within thirty (30) feet of the line of Da. Abernathy, thence N. 9-1/2 W, about 45 rods thence N. 24 E about 100-1/2 poles to the line between Mary Sanford and Tighlman Porter and Gertrude Porter, thence with their line thirty (30) feet wide from the beginning to the end, between the said described lines." We observe, however, that the parties' Stipulation 13 appears to omit one of the links on the northerly return route. One stipulated exhibit is a typewritten version of the original, handwritten 1892 easement (Joint Exhibit 5) and includes a northerly route description that is missing in the parties' Stipulation 13. The pertinent provisions for the northerly route, as shown in Joint Exhibit 5, reads:

> thence Westerly *with the center of said road on turnpike thirty (30) feet to a stone thence North 48 East about 42 rods* to a point within thirty (30) feet of the line of D. A. Abernathy thence North 9 & ½ West about 45 rods thence North 24 East about 100 & ½ poles to the line between Mary Sandford and Tighlman Porter & Gertrude Porter thence with their line thirty (30) feet to the place of beginning making a width or strip thirty (30) feet wide from the beginning to the end between the said described lines.

(Emphasis added).   The parties' stipulated language omits the italicized language, "with the center of said road on turnpike thirty (30) feet to a stone thence North 48 East about 42 rods." This route essentially is the reverse of the southerly route, i.e., "thence with the line of Scioto Abernathy S. 48 West 42.48 poles to a stone in the center of the Frankfort and Herods Creek Turnpike."

> Thus, with this reading it appears that the language unambiguously tracks the northerly return path of the easement to the southeast corner of the Ware tract.   It uses substantially the same descriptions as the southerly route but describes the return as proceeding in the opposite direction.   So, on the southerly route the easement travels to the center of the Frankfort and Herods Creek Turnpike.   On the northerly route, the easement travels north from the former Turnpike until it reaches the point where it began.

**{¶33}** This second paragraph thus describes the 30-foot-wide easement that runs between the Ware tract and the former Turnpike.   It does not define the entire easement.   Instead, this second paragraph defines the easement after it exits the Ware 66-acre tract.   Therefore, reading the two paragraphs together establishes that the 30-foot-wide easement runs along the east side of the original 66-acre Ware tract (of which appellees' parcel is a part) and continues uninterruptedly to

and from the former Frankfort and Herods Creek Turnpike (now,

County Road 550).

{¶34} The third paragraph then summarizes the second half of

the easement:

> Being a strip of land deeded to Tighlman Porter for the purpose of a road way, by Mary Sanford, John A. Sanford, Ella [] Sanford, Gertrude Devine, Michael Devine, and Jennie Devine, by a deed dated Feb. 19, 1889 and recorded in record of Deeds of Ross County, Vol. 101, Page 544 and deeded by Tighlman Porter, subject to his life estate therein, to Bertie H. Ware, by a deed dated Feb. 7, 1891 and recorded in record of deeds of Ross County, Ohio Vol. 111, age 447.

This third paragraph describes the strip of land contained in

the second paragraph to help further define the easement.  The

third paragraph shows that the easement was established for

Tighlman Porter to use as a roadway and Tighlman then deeded the

easement to Bertie H. Ware.

{¶35} The fourth paragraph reiterates the purpose of the

easement and states that the "road way as above described [is]

to be used by the said Deborah Carter or any future owner of

said lands or occupier of said lands as a passage way or road

way to and from said lands of Deborah Carter to the Frankfort

and Herods Creek Turnpike in perpetuity."

{¶36} After our review, we do not find any ambiguity in the

language.  As we explained above, the first paragraph defines

ROSS, 23CA9

the portion of the easement along the Ware tract.  The second paragraph is a continuation of that easement along the property of several others that travels south toward the center of the former Turnpike, then back to the beginning of the Ware tract for an uninterrupted easement between the original Carter property (now, appellant's property) and the former Turnpike (now, County Road 550).

{¶37} We recognize that Attorney Motes opined that the first paragraph does not describe an easement.  Instead, Motes thought that the first paragraph simply described the Ware tract. However, we believe that the language plainly states that it describes the route of the "gateway" as being a 30-foot-wide roadway along the east side of the Ware tract.  The language then describes the Ware tract that is subject to this 30-foot-wide easement.  We do not believe that it is equally plausible that this language simply describes the Ware tract and that the language about a 30-foot-wide roadway along the east side of the Ware tract has no meaning.

{¶38} Moreover, experts typically cannot testify regarding the interpretation of a legal instrument, which, absent ambiguity, constitutes a question of law.  *Am. Energy Corp. v. Datkuliak*, 174 Ohio App.3d 398, 2007-Ohio-7199, 882 N.E.2d 463,

ROSS, 23CA9

¶ 93 (7th Dist.) (trial court did not err by excluding expert testimony regarding unambiguous language of deed); *Nicholson v. Turner/Cargile*, 107 Ohio App.3d 797, 803, 669 N.E.2d 529 (10th Dist.1995) (disregarding expert opinion that contracts imposed a duty on defendants, saying "any expert opinion interpreting [the contract terms] has no effect"); *see Mentor Exempted Village School Dist. Bd. of Edn. v. Lake Cty. Educational Serv. Ctr. Governing Bd.*, 2016-Ohio-7649, 74 N.E.3d 706, ¶ 82 (11th Dist.) (trial court erred by considering expert's interpretation of a contract). In this case, we have found no ambiguity in the language contained in the easement. Thus, Motes's testimony is of no effect.

**{¶39}** We also recognize that Motes stated that the easement is not along the east side of the Ware tract. He did not, however, explain how he reached this conclusion. Instead, it appears to be a bare conclusion that the easement's plain language contradicts. Additionally, an August 8, 2018 survey map of appellees' property included with the parties' stipulations shows that the easement runs along the east side of the Ware tract.

**{¶40}** We also observe that to view the length of the entire easement would require severing the 2018 survey map into two

parts. The first part is on the right-hand side and illustrates the 30-foot-wide easement that runs along the east side of the original Ware tract. The second part is on the left-hand side and contains the easement that stretches from the southeast corner of the Ware lot to and from County Road 550. The survey map notes this distinction by pointing out the "matchline" for the two drawings, and joining the two drawings at the "matchline" would show a visual display of the entire easement.

{¶41} We further point out that the survey map of appellees' property identifies an "existing 30.00 foot wide ingress and egress easement as found in Deed Volume 136, Page 485." According to the parties' stipulations, Deed Volume 136, Page 485 contains the same language as the 1892 stipulated easement language and is the 1902 deed that Deborah Carter conveyed to Strawder Pancake. The parties further stipulated that this deed describes the same property that appellant now owns.

{¶42} In sum, we agree with appellant that the language of the easement is clear and unambiguous and grants appellant a 30-foot-wide easement that extends along the east side of appellees' property and continues to County Road 550. The trial court, therefore, erred by determining that appellant does not have a valid easement across appellee's property.

**{¶43}** Accordingly, based upon the foregoing reasons, we sustain appellant's second assignment of error.

II

**{¶44}** In his first assignment of error, appellant asserts that the trial court erred by denying his summary judgment motion.

**{¶45}** Because our disposition of appellant's second assignment of error renders his first assignment of error moot, we do not address it. *See* App.R. 12(A)(1)(c).

**{¶46}** Accordingly, based upon the foregoing reasons, we hereby reverse the trial court's judgment and remand this matter to the trial court for further proceedings consistent with this opinion.

JUDGMENT REVERSED AND CAUSE
REMANDED FOR FURTHER PROCEEDINGS
CONSISTENT WITH THIS OPINION.

JUDGMENT ENTRY

It is ordered that the appeal be reversed and remanded for further proceedings consistent with this opinion. Appellant shall recover of appellees the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.